UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATTY LYN SINGLETON,

       Plaintiff,

v.                         CASE No. 8:05-CV-1676-T-TGW

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.
_____

O R D E R

       The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security contains reversible errors, the decision will be reversed and the matter remanded for further proceedings.

I.

---

[1]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 12).

The plaintiff, who was forty-three years old at the time of the administrative hearing and who has more than a high school education (Tr. 76), has worked primarily as a licensed practical nurse (Tr. 71). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she has been disabled since October 10, 1999, due to low back pain, right shoulder pain, tremor of her upper right extremity, chronic pain syndrome, and obesity (Tr. 70). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff, up through May 4, 2003, engaged in substantial gainful activity and was therefore not disabled on, or before, that date (Tr. 18, 24). The law judge found further that the plaintiff, after May 4, 2003, has suffered from severe impairments of morbid obesity with subjective complaints of lower back pain, status-post right shoulder nerve root impingement repair, and tremors in the right upper extremity (Tr. 21, 24). He concluded that these impairments limited the plaintiff to light work with occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but no climbing of ladders,

scaffolds, or ropes (Tr. 22, 24).   He found further that the plaintiff should avoid unprotected heights and  jobs that require frequent use of her right shoulder for pushing/pulling or reaching overhead (Tr. 22, 24-25).   In addition, he found dexterity/fine manipulation with her right hand was limited to occasional use (Tr. 22, 25).   The law judge determined that these restrictions prevented the plaintiff from returning to past work.   However, based upon the testimony of a vocational expert, the law judge concluded that there were jobs in the national economy that the plaintiff could perform, such as cleaner/housekeeper, gate guard, and service establishment attendant. (Tr. 23, 25).   Accordingly, the law judge decided that the plaintiff was not disabled.  The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

A.  In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C.

423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."    42 U.S.C.  423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).  Therefore, in determining whether the Commissioner's decision is

-4-

supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims.  <u>See</u> 20 C.F.R. 404.1520, 416.920.   The first step inquires whether the claimant is engaging in substantial gainful activity.   20 C.F.R. 404.1520(h), 416.920(h).   If the claimant is working, the claim will be denied.  If the claimant is not working, the second step asks whether the claimant has a severe impairment.  20 C.F.R. 404.1520(c), 416.920(c).   An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a).  If an impairment is not severe, then a claimant is deemed to be not disabled.   20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past

relevant work.  20 C.F.R. 404.1520(e), 416.920(e).  If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in substantial numbers in the national economy.

### III.

The plaintiff makes three challenges to the law judge's decision. First, she alleges that the law judge erroneously found that the plaintiff had engaged in substantial gainful activity up through May 4, 2003 (Doc 17, pp. 6-8).  The plaintiff then argues that the law judge erred by failing to give credence to, and develop, the opinion of one of the plaintiff's treating physicians (id. at pp. 8, 9).  Finally, the plaintiff argues that the law judge did not properly take into account all the plaintiff's impairments when posing his hypothetical questions to the vocational expert (id. at pp. 9-12).  All of these contentions have merit, although the last two are interrelated.

At the hearing, the plaintiff testified that, in October of 1999, while working as a licensed practical nurse for the VA, she injured her back lifting a patient (Tr. 413, 416).  After the injury, she continued working for the VA as an office assistant through May 4, 2003 (Tr. 417).  The plaintiff testified that, due to the injury, she was only able to work as an office assistant

at most for one and a half hours a day, and three to four days a week (Tr. 418-19).  She specifically said that she did not work eight hours a day or five days a week during this time period, despite what the VA records might indicate (Tr. 418).

The law judge found that the plaintiff was engaged in substantial gainful activity and was not disabled through May 4, 2003 (Tr. 18).  In this respect, the law judge stated (id.):

> A review of the claimant's earnings record shows that the claimant earned approximately $5,700 in 2000, $5,6000 [sic] in 2001, $6,300 in 2002, and $2,4000 [sic] in 2003.  Nevertheless, employee attendance records from the VA show that, on a regular basis, the claimant worked eight hours a day, for five days a week (Exhibit 16E).  The evidence as a whole suggests that, through May 4, 2003, the claimant engaged in substantial activities, for which she was compensated.  For the period of time through May 4, 2003, the undersigned finds that the claimant was not under a "disability," as defined in the Social Security Act (20 CFR §§ 404.1520(b) and 416.920(b)).

This paragraph could be construed as a finding that the plaintiff worked forty-hour weeks through May 4, 2003, when she retired on a disability.  The parties do not seem to construe it that way (see Doc. 17, pp. 6-8; Doc. 20-1, pp. 5-7).  And if the law judge had made a finding that the plaintiff worked forty-hour weeks, it would not be supported by substantial evidence.

Contrary to the law judge's statement, the VA records do not show that the plaintiff worked eight hours per day and five days per week. Thus, the attendance summary contains different attendance codes for different time periods for nearly every single day, indicating that the plaintiff's attendance status was not the same for the entire day (Tr. 138-48). As a typical example, for the date of October 16, 2002, the summary shows a code of "LDI" from 08:00 to 09:30, a code of "LWOP" from 09:30 to 11:00, and a code of "UOJI" from 11:00 to 16:30 (Tr. 146). The law judge failed to take these different attendance codes into account in stating that the VA records showed that the plaintiff worked forty-hour weeks.

Furthermore, the drastic drop in the plaintiff's income after the date of the injury indicates a sharp decrease in the amount of hours worked. The plaintiff earned $30,036.44 in 1999, yet the most she earned in any year from 2000 to 2003, while still working for the VA, was $6,312.35 (Tr. 66).

In addition, there is other evidence in the record showing that the plaintiff did not work eight hours a day and five days a week between 2000 and 2003. Thus, there are multiple reports from Dr. Joel D. Scholten, a treating doctor at the VA, stating that the plaintiff was working between one to two hours per day (Tr. 222, 237, 252, 255, 258, 260). There is also a 2001

letter from the VA to Dr. Allen Miller, advising that the plaintiff continued to work only two hours per day (Tr. 210). The objective evidence, as well as the plaintiff's testimony, establishes that the plaintiff worked limited hours after the date of her injury until her disability retirement in 2003.

Of course, a claimant may engage in substantial gainful activity without working a full-time schedule. See 20 C.F.R. 404.1572, 416.972. That appears to be what the law judge concluded here in light of his statement that "[t]he evidence as a whole suggests that, through May 4, 2003, the claimant engaged in substantial activities, for which she was compensated" (Tr. 18). In other words, it seems that the law judge did not find that the plaintiff worked a forty-hour week (a finding that would not be supported by substantial evidence), but rather that the plaintiff engaged in part-time work that amounted to substantial gainful activity.

The regulations set out factors that are to be taken into consideration in determining whether work constitutes substantial gainful activity. See 20 C.F.R. 404.1573, 404.1574, 416.973, 416.974. In this case, however, the law judge did not articulate an evaluation of those factors.

Most significantly, the regulations set forth "[e]arnings that will ordinarily show that [the claimant] ha[s] engaged in substantial gainful

activity" and "[e]arnings that will ordinarily show that [the claimant] ha[s] not engaged in substantial gainful activity." 20 C.F.R. 404.1574(b)(2), (3); 416.974(b)(2), (3). For the years 2001-2003, the regulations consider earnings less than an indexed amount higher than $700 not to be substantial gainful activity.[2] 20 C.F.R. 404.1574(b)(3), 416.974(b)(3). The law judge did not mention this factor at all in his decision and certainly did not explain why the years 2001, 2002, and 2003 are not covered by the regulation indicating that average monthly earnings of less than an indexed amount of $700 do not constitute substantial gainful activity.

The regulations also provide that consideration should be given to whether the work was done under special conditions. 20 C.F.R. 404.1573(c), 416.973(c). The circumstances of the plaintiff's work at the VA during the period from her injury in October 1999 through May 4, 2003, warrant an assessment of that factor, as well.

In sum, the law judge's finding that the plaintiff engaged in substantial gainful activity through May 4, 2003, seems wrong and, in all

-------------------

[2]For the year 2000, the regulations indicate that a monthly average amount of more than $700 to be substantial gainful activity and a monthly average amount less than $300 not to be substantial gainful activity. 20 C.F.R. 404.1574(b)(2), (3); 416.974(b)(2), (3). The plaintiff's earnings for 2000 of $5,700 fall between these two guidelines and, thus, would require a distinct evauation.

events, is based upon a deficient (*i.e.*, non-existent) analysis.[3]  Arguably, this

error would not warrant a remand if the law judge's finding that the plaintiff

was not disabled as of May 5, 2003, is sustained, and that finding applied to

the prior period.  However, the finding that the plaintiff was not disabled on,

or after, May 5, 2003, also reflects reversible error.

   The plaintiff's second contention is that the law judge "erred by

failing to give credence to and develop the opinion of VA physician Joel

Scholten, M.D." (Doc. 17, p. 8).  This is interrelated with the plaintiff's third

argument, which is that the law judge erred in not posing a hypothetical

question that included all of the plaintiff's impairments.  Thus, Dr. Scholten

set forth work restrictions for the plaintiff, and the law judge needed either to

reasonably discount those restrictions, or to include them in the operative

hypothetical question.

   The plaintiff correctly points out that the opinion of a treating

physician is to be given substantial or considerable weight unless good cause

is shown to the contrary.  <u>Crawford</u> v. <u>Commissioner of Social Security</u>, 363

F.3d 1155, 1159 (11th Cir. 2004).  She notes further that, in order for a

---

[3]Notably, the Social Security Administration at the prior stages of the disability determination concluded that the plaintiff's work did not constitute substantial gainful activity (Tr. 85, 86).

vocational expert's testimony to constitute substantial evidence, the administrative law judge must pose a hypothetical question which comprises all of the claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).

In this case, Dr. Scholten, who was undoubtedly a treating physician, established the following work restrictions for the plaintiff (Tr. 223):

> No lifting > 10 pounds, no sitting > 2 hours at a time, may do intermittent and limited pushing/pulling/grasping. Needs 5-10 minute break every hour to switch positions and stretch. She is currently working approximately 2 hours per day, there is no medical indication that the [sic] Ms. Singleton would not be able to slowly increase her work tolerance. However[,] all attempts to improve the length of her work day have failed in the past.

Moreover, Dr. Scholten subsequently stated that the plaintiff continues on the same work restrictions (Tr. 341).

The law judge's evaluation of Dr. Scholten's opinions is contained in the following paragraph (Tr. 22):

> Once again, the undersigned asserts that proper weight has been assigned to the various medical opinions of record. Controlling weight has been assigned to those medical professionals that established a treating relationship with the claimant, including the records from Dr. Miller, the

VA and Dr. Scholten, Dr. McIlwain, and Dr.
Palumbo.   Although Dr. Scholten has suggested
that the claimant is incapable of working, the
doctor himself also admitted that he had no
objective evidence to support his conclusions.
Lesser weight has been given to those professionals
that examined the claimant, yet offered no on-going
care, such as Dr. Perez and Dr. Whiting.  Finally,
the least weight has been given to the State Agency
consultants of record.  That is not to say, however,
that these opinions are without any persuasiveness.

At the outset, it is obvious that the law judge, contrary to what he

said, did not give controlling weight to Dr. Scholten's opinions.  If he had, he

would have included Dr. Scholten's work restrictions in his residual

functional capacity determination and in his hypothetical questions.

Since the law judge clearly did not accept Dr. Scholten's

opinions regarding the plaintiff's work restrictions, he was required to state

good cause for not doing so.  He did not satisfy this requirement.  Thus, all

that the law judge said in support of discounting Dr. Scholten's opinions is

that "the doctor himself also admitted that he had no objective evidence to

support his conclusions" (Tr. 22).   Dr. Scholten, however, made no such

admission.  Rather, he simply said, as a separate item in his statement, "I have

no laboratory or radiologic test results concerning this patient are [sic]

available to me at this time" (Tr. 223).  The doctor's comment that he had no

laboratory or radiologic test results is not the same as a statement that he had no objective evidence to support his conclusions. Since Dr. Scholten was a treating physician, he could have had objective clinical findings that support his conclusion.

That is particularly so in this case where one of the plaintiff's severe impairments is morbid obesity. Thus, the plaintiff testified that she was 5'11" and weighed between 380 and 390 pounds (Tr. 427). This is plainly an objective condition that would not be reflected on a laboratory or radiologic test. Moreover, the law judge seemingly concluded that the plaintiff had some level of back pain, since he found her impairment to be "morbid obesity, with subjective complaints of lower back pain" (Tr. 24). This circumstance (along with the plaintiff's right shoulder and arm problems) would appear to justify Dr. Scholten's work restrictions. Consequently, the law judge's cavalier discounting of Dr. Scholten's work restrictions does not amount to good cause.

## IV.

In sum, the law judge's finding that the plaintiff engaged in substantial activity through May 4, 2003, is based upon a flawed and deficient analysis. That error, moreover, is not harmless in light of the law

judge's inadequate evaluation of Dr. Scholten's opinions.  It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner is hereby REVERSED and the matter is REMANDED for further consideration.  The Clerk shall enter judgment in accordance with this Order and close the case.

DONE and ORDERED at Tampa, Florida, this 22nd day of September, 2006.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE